UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ANGELA MONTGOMERY, )<br> )<br>      Plaintiff, )<br> )<br>v. )<br> )<br>WYETH, f/k/a American Home Products Corp.,)<br>AHP SUBSIDIARY HOLDING )<br>CORPORATION f/k/a Wyeth-Ayerst, )<br>Laboratories Company; WYETH )<br>PHARMACEUTICALS, INC. f/k/a Wyeth- )<br>Ayerst Pharmaceuticals, Inc., )<br> )<br>      Defendants. ) | No. 1:05-CV-323<br><br>Chief Judge Curtis L. Collier |

## **MEMORANDUM**

Rarely does this Court suggest that a legislative body reconsider one of its enactments. The Court believes its role is simply to apply the law applicable to the case before it and not concern itself with the merits of the case. However, because of the result in this case, this is one of those rare cases where the Court believes it is appropriate to urge the Tennessee legislature to look closely at the law governing this case.

Plaintiff Angela Montgomery ("Plaintiff") alleges she used the diet drug Pondimin in 1996 and 1997. According to Plaintiff, Pondimin caused her to develop Primary Pulmonary Hypertension, a progressive, fatal disease, in 2005. Later that year, she filed this product liability case against Pondimin's manufacturer, defendant Wyeth ("Defendant").[1] Invoking a rarely-used provision in Tennessee's product liability statute of repose, Defendant moved for summary

---

[1] Two related companies are also defendants. The defendants collectively refer to themselves as Wyeth.

judgment, claiming Plaintiff's case was untimely (Court File Nos. 83). The Court has considered the briefs filed by Defendant (Court File Nos. 84, 101 & 107) and Plaintiff (Court File Nos. 98 & 106). As explained below, the statue of repose eliminated Plaintiff's cause of action before it accrued, and therefore Defendant's motion for summary judgment will be **GRANTED** (Court File No. 83).

I.  BACKGROUND

Plaintiff was an overweight but healthy woman when she began taking Pondimin, a diet drug manufactured, licensed, marketed, and detailed by Defendant. She took Pondimin for over 90 days in 1996 and 1997. Pondimin, which was made from a combination therapy of fenfluramine and phentermine, known as "Fenphen," was withdrawn from the market in September 1997, and the Food and Drug Administration found it to be unsafe.

In 2005, Plaintiff was diagnosed with Primary Pulmonary Hypertension ("PPH"), a rare, progressive, debilitating, and fatal disease affecting the heart and lungs. She alleges Pondimin caused her to develop PPH. Defendant allegedly knew of the dangers of Pondimin since at least 1995 but downplayed and concealed evidence of serious side effects and opposed putting prominent black box warnings on the drug. Plaintiff contends it is widely accepted Pondimin causes PPH, including latent PPH. Defendant does not deny Pondimin can cause PPH, but denies it caused PPH in Plaintiff.

Plaintiff filed this case in state court in October 2005, and it was removed to this Court in November 2005 (Court File No. 1). The case was transferred to a Multi-District Litigation ("MDL") court for pretrial proceedings in February 2006 (Court File No. 11) and remanded to this Court in

July 2007 (Court File No. 14). After the parties had fully briefed Daubert motions regarding expert witnesses, Defendant filed its summary judgment motion.

## II.     STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.    DISCUSSION

## A.   The Product Liability Statute of Repose

Defendant contends Plaintiff's complaint is barred by Tennessee's product liability statute of repose. Plaintiff's case is based on personal injury resulting from a product, and therefore is a product liability action as defined in the product liability statute, Tenn. Code Ann. § 29-28-102(6). The product liability statute of repose states:

> Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought within the period fixed by §§ 28-3-104 [etc.], but notwithstanding any exceptions to these provisions, it must be brought within six (6) years of the date of injury, in any event, the action must be brought within ten (10) years from the date on which the product was first purchased for use or consumption, or *within one (1) year after the expiration of the anticipated life of the product*, whichever is the shorter . . .

§ 29-28-103 (emphasis added). The "anticipated life of the product" is the "expiration date placed on the product by the manufacturer when required by law but shall not commence until the date the product was first purchased for use or consumption." § 29-28-102.[2]

Defendant stopped manufacturing Pondimin on September 2, 1997 (Court File Nos. 84-4, p. 2 & 84-6). Defendant's evidence establishes that the packaging for Pondimin contained expiration dates as required by law, and those expiration dates were three years from the date of manufacture (Court File No. 84-4 p. 2); 21 C.F.R 201.17; 21 C.F.R. 211.137. In an affidavit, Plaintiff states neither the pills she purchased nor the bottle containing the pills had an expiration date (Court File No. 98-12, ¶ 7). Defendant acknowledges Plaintiff did not get the pills in their

---

[2]The statute of repose contains exceptions for minors and for actions resulting from asbestos or silicone gel breast implants. Tenn. Code Ann. § 29-28-103(a) and (b). Courts have refused to add other exceptions. *Winningham v. Ciba Geigy Corp.*, No. 97-5777, 1998 WL 432472, 1998 U.S. App. LEXIS 16388 (6th Cir. July 14, 1998); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 184-85 (Tenn. 2000).

original packaging because they were re-packaged by the distributor who bought them from Defendant and sold them to Plaintiff. However, this cannot create a genuine issue of material fact. The law required the manufacturer to place an expiration date on the product based on stability testing. Defendant did place expiration dates on the product, even if the packaging of that product was different than what Plaintiff eventually received, and those expirations were at the latest September 2000.[3] Plaintiff filed this case in October 2005 after being diagnosed with PPH earlier that year. Therefore, Defendant contends the statute of repose bars Plaintiff's claim because it was filed after September 2001.

This Court is bound by *Spence v. Miles Lab.*, 37 F.3d 1185 (6th Cir. 1994), which upheld a decision from this district granting summary judgment to a products liability defendant. The court held the product liability claim was barred by the statute of repose because the expiration date on a package of blood (which was infected with AIDS and was transferred to the plaintiff) was June 5, 1987, and the plaintiff had filed his product liability claim more than one year after that date. *Id.* at 1190. Specifically, he had filed his action in 1991, less than one year after discovering he had AIDS. *Id.* at 1188.

Although the anticipated life provision has been part of the statute of repose for the statute's entire three decades of existence, aside from *Spence* there is only one other case applying the anticipated life provision. In that case, an MDL court applying Tennessee law dismissed the plaintiffs' claims because they were filed more than one year after the expiration date of the drugs

---

[3]Plaintiff asserts some of the Pondimin Defendant sold was imported from Europe, but the evidence shows some fenfluramine, a component of Pondimin, was purchased there (Court File No. 98-17). Defendant states that although some fenfluramine was purchased in Europe, all Pondimin was manufactured and packaged in the United States (Court File No. 102-7).

5

at issue. *In re Vioxx Prods. Liab. Litig.*, No. 07-1259, 2007 WL 3353404, *4, 2007 U.S. Dist. LEXIS 83709, *14-*15 (E.D. La. Nov. 8, 2007).

Although there are only two decisions applying the anticipatory life provision of the statute of repose, there are numerous decisions applying the statute's alternate provision requiring a case be "brought within ten (10) years from the date on which the product was first purchased for use or consumption." § 29-28-103.[4] Those decisions have held the statute of repose bars claims even if they would otherwise be permitted by the statute of limitations because the time period in the statute of repose is superimposed on the statute of limitations. *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 185 & 187 (Tenn. 2000); *Wyatt v. A-Best Prods. Co.*, 924 S.W.2d 98, 104 (Tenn. Ct. App. 1995); *Milligan v. American Hoist & Derrick Co.*, 622 F. Supp. 56, 58 (M.D. Tenn. 1985). The Tennessee Supreme Court has explained:

> Statutes of repose operate differently than statutes of limitation, primarily because statutes of repose typically begin to run with the happening of some event unrelated to the traditional accrual of the plaintiff's cause of action. Because a plaintiff's cause of action can be eliminated by a statute of repose even before it accrues, statutes of repose have been said to extinguish both the right and the remedy. The courts of this state have construed statutes of repose as an absolute time limit within which actions must be brought, and this Court has characterized the statute of repose as an outer limit or ceiling superimposed upon the existing statute of limitations . . . Where the injury occurs within the [repose] period, and a claimant commences his or her action after the [repose] period has passed, an action accrues but is barred. Where the injury occurs outside the [repose] period, no substantive cause of action ever accrues, and a claimant's actions are likewise barred.

*Penley*, 31 S.W.3d at 184 (internal quotation marks and citations omitted).

Plaintiff complains applying the statute of repose would bar her claim before she could file

---

[4]Although the Tennessee courts have never applied the anticipatory life provision in a reported decision, the Tennessee Supreme Court has noted in dicta that it would "presumably" bar claims just like the alternative 10-year period. *Penley*, 31 S.W.3d at 185 n.3.

it. A cause of action for personal injury does not accrue until a plaintiff knows or reasonably should know an injury has been sustained, which is known as a discovery rule. *Wyatt v. ACandS, Inc.*, 910 S.W.2d 851, 854 (Tenn. 1995). Therefore, when a plaintiff does not discover (and could not have reasonably discovered) her injury until after the statute of repose period, the cause of action never accrues. *See Murphy v. Owens-Corning Fiberglas Corp.*, No. 96-6455, 1997 WL 705185, 1997 U.S. App. LEXIS 30530 (6th Cir. Nov. 4, 1997) (quoting *Cantrell v. Buchanan*, 1989 WL 25598,*1, 1989 Tenn. App. LEXIS 237 (Tenn. Ct. App. Mar. 22, 1989) (applying Tennessee's medical malpractice statute of repose) ("[the statute of repose] bars the plaintiffs' right to seek redress before they even knew about the injury. Despite the harshness of this result, this court cannot simply abrogate the legislature's enactment.")); *Wayne v. Tennessee Valley Authority*, 730 F.2d 392, 401 (5th Cir. 1984) (applying Tennessee's product liability statute of repose) ("Because the date of injury is not a factor used in computing the running of the time period, and such statutes typically do not have tolling provisions, the statutes acquire a substantive nature, barring rights of action even before injury has occurred if the injury occurs subsequent to the prescribed time period.").

In enacting the statute of repose, the Tennessee General Assembly sought "to provide a reasonable time within which action may be commenced against manufacturers and/or sellers while limiting the time to a specific period of time for which product liability insurance premiums can be reasonably and accurately calculated." *Penley*, 31 S.W.3d at 187 (quoting 1978 Tenn. Pub. Acts ch. 703 preamble). Courts have consistently rejected due process and other constitutional challenges to the statute. *E.g.*, *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1135 (6th Cir. 1986); *Mathis v. Eli Lilly & Co.*, 719 F.2d 134, 136 (6th Cir. 1983); *Spence v. Miles Lab.*, 810 F. Supp. 952, 960 (E.D. Tenn. 1992); *Buckner*, 495 F. Supp. at 353; *Jones v. Five Star Engineering, Inc.*, 717 S.W.2d

7

882 (Tenn. 1986); *King-Bradwall Partnership v. Johnson Controls*, 865 S.W.2d 18, 21 (Tenn. Ct. App. 1993).

Whether the statute of repose is good policy is a question for the Tennessee General Assembly. *See Kochins*, 799 F.2d at 1140; *Mathis*, 719 F.2d at 139; *Jones v. Methodist Healthcare*, 83 S.W.3d 739, 744 (Tenn. Ct. App. 2001) ("Only the hardest of hearts could not feel deeply for the Plaintiffs . . . However, we are not permitted to allow sympathy to enter into our decisions on matters of law."). Five states in addition to Tennessee have statutes of repose predicated on the life of a product, but unlike Tennessee, all those states allow lawsuits for harm that does not manifest itself until after the repose period. Fla. Stat. § 95.031(c); Idaho Code § 6-1403(b)(4); Kan. Stat. Ann. § 60-3303(b)(2)(D); Tex. Civ. Prac. & Rem. Code Ann. § 16.012(d); Rev. Code Wash. § 7.72.060(1)(b)(iii).[5] Tennessee's anticipatory life provision thus appears to be the harshest of those statutes of repose, and in this case bars Plaintiff from bringing her claim for PPH.

### B. Plaintiff's Reasons for Not Applying the Statute of Repose

Plaintiff argues the statute of repose should not apply because (1) she is a member of a class action whose claims were pending in 1999 and the settlement agreement for that class action preserved her right to sue for PPH; (2) Defendant waived its statute of repose defense; and (3) if a conflict exists between the laws of Tennessee and Georgia, then it is appropriate in this case to apply Georgia law. The Court will consider, and ultimately reject, each argument.

#### 1. The original class action and its settlement agreement

---

[5]In addition, in Minnesota, evidence regarding when an injury occurred relative to the useful life of a product is one factor in determining fault. *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 832 (Minn. 1988) (citing Minn. Stat. § 604.03). And in Connecticut, the useful life of a product only becomes relevant 10 years after the product is sold. Conn. Gen. Stat. § 52-577a(c).

8

Plaintiff asserts she is or was a member of a class action, which was when she actually filed her claim, and the class action settlement agreement contractually preserved her right to sue Defendant for PPH. Defendant contends the class action did not include PPH claims and does not toll the statute of repose.

Plaintiff, as a person who ingested Pondimin, was part of a class action, MDL 1203, which was certified to include "All persons . . . who ingested Pondimin." (Court File No. 98-13); *In re Diet Drugs*, MDL 1203 Pretrial Order ("PTO") 1415, 2000 WL 1222042, *69, 2000 U.S. Dist. LEXIS 12275, *209 (E.D. Pa. Aug. 28, 2000). However, the settlement agreement for that class action did not include claims based on PPH (Court File No. 98-14, p. 13). Claims based on PPH were not "settled claims" (*id.*) because the class complaint expressly excluded claims based on PPH (Court File Nos. 102-2, 102-3, 102-4, 102-5).

Upon settlement, the MDL court dismissed the class action, so the case is no longer pending. *In re Diet Drugs*, PTO 1415, 2000 WL 1222042 at *71, 2000 U.S. Dist. LEXIS 12275 at *214. Plaintiff suggests PPH claims were not dismissed, but no PPH claims were asserted. Therefore, Plaintiff's reliance on *Cronin v. Howe*, 906 S.W.2d 910 (Tenn. 1995), is not persuasive. *Cronin* dealt with a claim that had been asserted and then was non-suited before being refiled using a saving statute. Here, Plaintiff never asserted a timely claim for PPH and no saving statute is applicable. In other words, Plaintiff was a member of the class action based on her use of Pondimin, but the harm asserted was not PPH, and so it was not until Plaintiff filed the instant case in 2005 that she asserted a claim based on PPH.

The settlement agreement "fully preserves" the rights of persons who have or develop PPH to sue. *In re Diet Drugs*, PTO 1415, 2000 WL 1222042 at *31, 2000 U.S. Dist. LEXIS 12275 at

9

*92; (Court File No. 98-14). The settlement agreement also provides a definition for PPH (Court File No. 98-14, p. 8), and requires a plaintiff to meet that definition before she can sue Defendant for PPH. *In re Diet Drugs*, MDL 1203 PTO 2912, 2003 U.S. Dist. LEXIS 12092, *11 (E.D. Pa. July 2, 2003). That definition is a contractual provision in a freely-negotiated settlement about which all class members had notice and an opportunity to object. *In re Diet Drugs*, MDL 1203 PTO 2623, 2002 U.S. Dist. LEXIS 20323, *11 (E.D. Pa. Oct. 8, 2002). The settlement agreement gives class members with PPH "a right to the full and complete relief allowed by law." *In re Diet Drugs*, MDL 1203 PTO 3085, 2003 WL 22669132, *1, 2003 U.S. Dist. LEXIS 20221, *16 (E.D. Pa. Oct. 24, 2003). The problem for Plaintiff is the settlement agreement cannot change Tennessee substantive law. *See In re Diet Drugs*, PTO 2623, 2002 U.S. Dist. LEXIS 20323 at *13 ("Any PPH claim, of course, will be subject to the substantive law and evidentiary and procedural rules of the place where the claim is being litigated.").

Plaintiff complains the settlement agreement prevented her from asserting her PPH claim until the PPH definition was met. The parties contractually agreed as to the administration of PPH claims, but could not create a substantive claim that is barred by Tennessee law. Furthermore, the PPH definition was articulated by leading medical experts and has never been challenged as inaccurate. *In re Diet Drugs*, PTO 3085, 2003 U.S. Dist. LEXIS 20221 at *17; *In re Diet Drugs*, PTO 2623, 2002 U.S. Dist. LEXIS 20323 at *11. "If anything, the definition is more generous to claimants than it might otherwise have been." *In re Diet Drugs*, PTO 3085, 2003 U.S. Dist. LEXIS 20221 at *17. Therefore, the settlement agreement is not what prevented Plaintiff from asserting her right to sue for PPH. The prohibition is that she developed PPH after the statute of repose period.

10

Plaintiff argues the following provision in the settlement agreement requires the Court to treat the class action and Plaintiff's PPH claim as a single claim: "In the event that a Class Member initiates a claim based on PPH, [Defendant] shall not assert a defense based on 'splitting' of claims, causes of action and/or parties by virtue of the fact that the Class Member is included in the Settlement, but the claim based on PPH is not a Settled Claim." (Court File No. 98-14, p. 126). Looking to the plain text of this provision, it is not applicable: Defendant is not defending the claim based on the fact that Plaintiff is a class member but PPH is not a settled claim. Although the meaning of this provision does not exactly leap off the page, the language appears to bar Defendant from asserting a defense based on claim preclusion, i.e., Defendant may not assert a PPH claim is precluded on the grounds it is the same cause of action as the class action. That reading of the language gives effect to the entire sentence. That reading also reinforces the notion that a claim for PPH is different from the class action claims. The language refers to "initiat[ing]" a claim based on PPH, which would not be necessary if a PPH claim was already pending.

Plaintiff also points to this language in the settlement agreement, which she contends bars a statute of repose defense: "for purposes of any statutes of limitations or similar time bar, [Defendant] shall not assert that a Class Member actually had PPH unless and until the condition of the Class Member meets the definition of PPH set forth in [the settlement agreement]." (Court File No. 98-14, p. 126). Defendant contends the statute of repose is not "similar" to a statute of limitations, and notes that another provision in the settlement agreement prohibits defenses based on statutes of repose (*id.*, p. 31), so it is apparent that the drafters of the settlement agreement knew how to bar a statute of repose defense. Furthermore, the text of the provision does not actually bar Defendant from applying a statute of repose defense. The provision prevents Defendant from

11

"assert[ing] that a Class Member actually had PPH," and it is obvious Defendant is not asserting Plaintiff had PPH. It appears the provision mentions statutes of limitations, but not statutes of repose, because it is concerned with when a plaintiff develops PPH, which may be relevant to a statute of limitations discovery rule. In other words, by preventing Defendant from claiming a plaintiff had PPH before the plaintiff meets the definition, a plaintiff may toll a statute of limitations until she discovers she has PPH.[6] But that is not the situation here, where the date Plaintiff discovered she had PPH is immaterial to the statute of repose.

Therefore, the Court concludes Plaintiff's claim was not asserted in the original class action, and the settlement agreement cannot save the claim from the statute of repose.

### 2. Waiver of the statute of repose defense

Plaintiff asserts Defendant waived its statue of repose defense by not sufficiently pleading it. Specifically, Plaintiff argues Defendant never gave notice of a statute of repose defense and did not plead sufficient facts for its defense so as to give Plaintiff notice or the opportunity to conduct discovery. Plaintiff notes there was no way for her to guess that she needed to know the expiration dates on the drugs, and Defendant waited until after the close of discovery to bring its summary judgment motion raising the issue of expiration dates for the first time.

The Federal Rules of Civil Procedure require notice pleading. *See* Fed. R. Civ. P. 8. Defendant gave general notice of its statute of repose defense in the introduction to its answer, which states, "Plaintiff's causes of action are barred in whole or in part by the applicable statutes of limitations and repose," and in one of its 58 affirmative defenses: the "defenses of the Tennessee

---

[6]As Defendant points out, the MDL court has recognized Defendant's right to assert a statute of limitations defense. *Mingus v. Wyeth*, MDL 1203, No. 04-23744, 2006 WL 1050289, *3, 2006 U.S. Dist. LEXIS 17557 (E.D. Pa. Apr. 20, 2006).

12

Case 1:05-cv-00323   Document 108   Filed 03/19/08   Page 12 of 19   PageID #: 4771

Products Liability Act of 1978, as codified in [Tenn. Code Ann.] §§ 29-28-101 through 108." (Court File No. 8, pp. 2 & 32).

Even if Defendant had not relied on the statute of repose in its answer, it is unlikely the statute of repose could be waived because it is a matter of substantive law, unlike a statute of limitations, which is procedural. *Cronin*, 906 S.W.2d at 913 (citing *Bruce v. Hamilton*, 894 S.W.2d 274, 276 (Tenn. App. 1993)); *Hayes v. GMC*, No. 95-5713, 1996 WL 452916, 1996 U.S. App. LEXIS 22345, *12 (6th Cir. Aug. 8, 1996); *cf. Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 903 (6th Cir. 2002) (construing Michigan's similar statute of repose).[7]

Defendant filed this motion for summary judgment before the dispositive motions deadline but after the parties had filed extensive briefs on Daubert motions. Even if the Court were to assume Defendant delayed filing this motion in bad faith, there is no basis for concluding Defendant waived its right to rely on the statute of repose.

### 3. Choice of law: Georgia or Tennessee

Plaintiff argues that if the Tennessee product liability statute of repose bars her claim, then an actual conflict exists between the laws of Tennessee and Georgia, which would necessitate the Court determining which state's law should apply. Plaintiff contends Georgia law is applicable. Defendant argues no choice of law analysis is necessary, but if it is, Tennessee law applies.

As a federal court sitting in Tennessee, this Court must apply Tennessee's choice-of-law rules. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *Uhl v. Komatsu*

---

[7]In 2006, Tenn. R. Civ. P. 8.03 was amended to add the statute of repose as an affirmative defense that must be pleaded in an answer. Because Defendant's answer asserted the statute of repose, this Court need not decide whether Tennessee's inclusion of the statute of repose as an affirmative defense affects previous Tennessee court decisions holding it cannot be waived.

13

*Forklift Co.*, 512 F.3d 294 (6th Cir. 2008). A court only needs to make a choice-of-law decision when there is a conflict between the laws of two states. *Gov't Emples. Ins. Co. v. Bloodworth*, No. M2003-02986-COAR10CV, 2007 WL 1966022, 2007 Tenn. App. LEXIS 404 (Tenn. Ct. App. June 29, 2007); *see Hataway v. McKinley*, 830 S.W.2d 53, 55 (Tenn. 1992)). Here, there is a conflict because Georgia's statute of repose would not bar Plaintiff's claim. *See* O.C.G.A. § 51-1-11(b)(2).

Defendant argues it is too late for Plaintiff to seek the application of Georgia law. Defendant points to numerous references to Tennessee law in Plaintiff's complaint, briefs, and depositions and in Defendant's answer. Plaintiff contends there was no need to decide choice-of-law issues until now, but Defendant contends there have already been multiple differences in the substantive laws of the two states. Furthermore, Defendant argues Plaintiff has been on notice of the statute of repose defense since it filed its answer, and cannot now attempt to use Georgia law after the parties have been litigating this case using Tennessee law.[8] Because this is the first time in this case the Court has been called upon to decide which law applies, the Court will do so.

Tennessee uses the "most significant relationship" approach to choice-of-law questions. *Nixon v. Waste Mgmt.*, 156 F. App'x 784, 787 (6th Cir. 2005) (citing *Hataway*, 830 S.W.2d at 59). In a personal injury action, "the law of the state where the injury occurred governs unless another state has a more significant relationship under the principles stated in § 6 [of the Restatement (Second) of Conflict of Laws] to the occurrence and the parties." *Id.* at 788 (internal quotation

---

[8]If the Court uses Georgia law, it must use Georgia's substantive law for the entire case. *Lemons v. Cloer*, 206 S.W.3d 60, 69 (Tenn. Ct. App. 2006) (holding the law of another state cannot be "cherry pick[ed]"; "once a Tennessee court determines that a foreign court has the 'most significant relationship,' that state's substantive law applies as fully as if the occurrence had taken place in the foreign state.").

14

marks omitted).[9] Determining the more significant relationship requires the Court to consider:

    (a) the place where the injury occurred,

    (b) the place where the conduct causing the injury occurred,

    (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,

    (d) the place where the relationship, if any, between the parties is centered.

Restat 2d of Conflict of Laws, § 145(2). The Court will analyze those four factors:

    **a. Place where injury occurred.** In most tort cases, the place of injury is obvious: e.g., the site of a vehicle collision, plane crash, or construction accident. But the place of injury is not as clear when the injury is a latent disease. Plaintiff argues the injury occurred primarily in Georgia because that is where Defendant's actions caused this lawsuit and is where Plaintiff filled her Pondimin prescriptions and first ingested Pondimin.[10] Defendant argues the injury occurred in Tennessee, where Plaintiff resides and developed the disease allegedly from drugs she bought to consume in Tennessee. There is no Tennessee law for determining where a latent injury is suffered. Plaintiff's injury is PPH. There is no indication Plaintiff suffered from PPH in Georgia. Rather, she

---

[9]Those principles are:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Restat 2d of Conflict of Laws, § 6.

[10]Although Plaintiff first ingested Pondimin in Georgia, she states she mostly ingested it in Tennessee.

developed PPH while living in Tennessee and has been treated for the disease in Tennessee. This conclusion comports with the language of Tennessee's product liability statute of limitations, which specifies that a cause of action accrues when a plaintiff suffers her injury, not when she purchases a product. Tenn. Code Ann. § 28-3-104(b)(1).[11] Since Plaintiff developed her injury while living in Tennessee, her place of injury is Tennessee.

**b. Place where the conduct causing the injury occurred.** Plaintiff argues the conduct causing the injury occurred in Georgia, and Defendant does not expressly dispute this. Plaintiff bought Pondimin from a clinic in Georgia because Tennessee banned its sale at the time she started taking the drug. She was prescribed the drug by Georgia doctors and signed a consent form with the proscribing clinic in Georgia. In prescribing the drugs, the doctors in Georgia relied on allegedly false information from Defendant. Based on these facts, it can reasonably be stated that the conduct causing Plaintiff's injury occurred in Georgia.

**c. Domicile, residence, nationality, place of incorporation and place of business of the parties.** Plaintiff has lived in Tennessee during the relevant time periods. Defendant is incorporated in Delaware and has its principal place of business in New Jersey.

**d. Place where the relationship, if any, between the parties is centered.** Plaintiff argues the parties' relationship was in Georgia, but there was no direct relationship. The only direct relationship between the parties was in the class action, in which Defendant sent information to Plaintiff in Tennessee, although the class action is not part of the injury that caused Plaintiff's

---

[11]Plaintiff points to *Snyder v. Town Insulation, Inc.*, 81 N.Y.2d 429, 434-36 (N.Y. 1993) for the proposition an injury is complete at the moment of exposure. But that holding essentially relies on the lack of a discovery rule, which is not the case in Tennessee, where a cause of action does not accrue until a plaintiff discovers she suffered an injury.

16

lawsuit. The indirect relationship Plaintiff and Defendant had in Georgia weighs in favor of Georgia, but is weak.

Evaluating those factors, the Court concludes Tennessee has the most significant relationship. Tennessee is where Plaintiff consumed Pondimin and suffered her injury. In contrast, the only contact with Georgia is that Plaintiff purchased Pondimin from a third party there. That is less significant than the contacts in *In re Bendectin Litigation*, 857 F.2d 290, 305 (6th Cir. 1988), where Ohio was not only the state of distribution but also the state where the drugs in question were manufactured, a fact the Court emphasized in deciding it was proper to apply Ohio law.

Furthermore, the principles in the Restatement (footnote 9, *supra*) suggest Tennessee law should apply. Plaintiff argues Tennessee has an interest in compensating its resident and Georgia has an interest in regulating a product sold in its state. But this argument fails. Tennessee's interest is not in compensating its resident for harm done to her. Such an interest may be a good idea, but that is a decision for the General Assembly, not the Court. The policy of Tennessee as exemplified through its statute of repose is that residents who suffer from diseases with long incubation or latency periods are not entitled to recover for harms done to them. Although this statute is designed to limit product liability costs for manufacturers and sellers, it is not inapplicable merely because the product was not purchased in Tennessee. Pondimin was sold for a short period of time in Tennessee, and PPH is not the only latent disease for which the legislature decided not to create an exception. To the extent Tennessee wants to protect Pondimin's manufacturers and sellers from product liability costs, the statute advances that goal. And while Georgia does have an interest in regulating a product sold there, Tennessee has an interest in regulating a product used here; it chooses to effect that interest by strictly limiting the time that actions can be brought.

Although the exclusive use of Tennessee law in pleadings, briefs, and depositions is not dispositive to this issue, it does relate to the principles in the Restatement. For instance, "ease in the determination and application of the law to be applied" and the "needs of the interstate" system are harmed by changing the governing law after the parties, through their course of conduct, have settled on a state's law. Likewise, the Court cannot protect "justified expectations" if it switches the law after the parties have extensively relied on Tennessee law. Using Tennessee's law also increases the "certainty, predictability and uniformity of result"; it would be harmful if a party could change the governing law whenever faced with a dispositive motion. As stated in *Hataway*, these principles are only part of the determination of which state has the most significant relationship. In this case, where a Tennessee resident bought Pondimin from a third party in Georgia, and used the drug mostly in Tennessee, causing her illness in Tennessee, and where the parties have already relied exclusively on Tennessee law, the Court concludes Tennessee law is applicable.

### IV.    CONCLUSION

It has been 30 years since Tennessee enacted its product liability statute of repose. The statute's rarely-invoked anticipated life provision can bar a claim even before the cause of action accrues, such as in this case, where Plaintiff alleges she suffers from a latent disease but lacks a cause of action against Defendant. The Court agrees this results in a harsh outcome, but that is the law of Tennessee and that is why Defendant's motion for summary judgment must be **GRANTED**.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**

18

**CHIEF UNITED STATES DISTRICT JUDGE**